UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE O'DOWD and MICHAEL CRAIG, individuals,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>MEP CAPITAL HOLDINGS III, L.P., a limited partnership, MEP CAPITAL III GP, LLC, a limited liability company, and CASPERT MANAGEMENT CO., INC., a corporation<br><br>　　　　　　　Defendants. | Civil Case No. 23-cv-7958<br><br>**COMPLAINT FOR DECLARATORY RELIEF TO QUIET TITLE TO COPYRIGHT INTERESTS** |

　　　　Plaintiffs GEORGE O'DOWD, professionally known as "Boy George," and MICHAEL CRAIG (collectively, "Plaintiffs"), by their attorneys, Rimon P.C., for their complaint against Defendants MEP CAPITAL HOLDINGS III, L.P., MEP CAPITAL III GP, LLC (jointly, "MEP"), and CASPERT MANAGEMENT CO., INC., ("Caspert," and collectively with MEP, "Defendants"), hereby allege, on personal knowledge as to themselves and on information and belief as to all other matters, as follows:

### SUMMARY OF ACTION

　　　　1.　　Defendants are trying to sell copyright termination interests they do not own based on a Copyright Security Agreement that is invalid under copyright law. Their actions cloud Plaintiffs' title to those termination interests and otherwise harm Plaintiffs. Plaintiffs seek an order declaring that (i) the relevant Copyright Security Agreement MEP are trying to enforce is invalid, (ii) MEP have no cognizable ownership or other interest in Plaintiffs' copyrighted termination interests, and (iii) Defendants are enjoined from any further attempts to sell

Plaintiffs' copyright termination interests or otherwise cloud Plaintiffs' title to their music compositions in any manner.

## PARTIES

2. Plaintiff George O'Dowd is a British citizen, domiciled in and a resident of the United Kingdom.

3. Plaintiff Michael Craig is a British citizen, domiciled in and a resident of the United Kingdom.

4. Defendant MEP Capital Holdings III, L.P. is a limited partnership organized under the laws of the State of Delaware which has its principal place of business in New York, New York.

5. Defendant MEP Capital III GP, LLC is a limited liability company organized under the laws of the State of Delaware which has its principal place of business at the same address in New York as Defendant MEP Capital Holdings III, L.P. It is the general partner of limited partnership and Defendant MEP Capital Holdings III, L.P.

6. Defendant Caspert Management Co., Inc. is a corporation organized under the law of the State of New Jersey which has its principal place of business in New Jersey. It is the auctioneer and agent of MEP Capital Holdings III, L.P. with regard to the copyright termination interests discussed herein.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as it arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., including by requiring the interpretation of the Copyright Act and the scope, meaning, and effect of the

statutory termination provisions of 17 U.S.C. § 203, and because federal principles should control the claim.

8. Alternatively, the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) insofar as it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Venue is proper in this District under 28 U.S.C. § 1400(a), insofar as Defendant resides or may be found here, or, alternatively, under 28 U.S.C. § 1391(b)(2), insofar as a substantial part of the events or omissions giving rise to the claims occurred in this District, or, alternatively, under 28 U.S.C. § 1391(b)(3), or alternatively under the Section 10.6 of the Note Purchase Agreement (as defined below), insofar as Defendants are subject to the Court's personal jurisdiction here.

## **GENERAL BACKGROUND**

**A.  Plaintiffs and Their Copyrighted Music Compositions.**

10. Plaintiffs are musicians, songwriters, and two members of the musical group "Culture Club." They have written or co-written songs performed by that group that, since the early 1980s, have appeared on five albums and sold more than 50 million records worldwide, with over seven million RIAA-certified records sold in the U.S.

11. Since about 1982, Plaintiffs have registered their music compositions with the U.S. Copyright Office and have obtained U.S. copyright registrations for them, as reflected in Exhibits 1 through 6 discussed below. Plaintiffs also granted rights in those music compositions to various music publishing companies shortly after they were created.

**B.      Copyright Termination Rights.**

12.     U.S. copyright law has always intended for authors to be able to retrieve unremunerative transfers made in the original copyright term, because the value of a copyright is "incapable of ... monetary evaluation prior to its exploitation." *3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 9.02 (LexisNexis 2016).* For more than 150 years, copyright law did that through what were called "renewal" rights, which under the Copyright Act of 1909 allowed an author to "renew" his original copyright for an additional 28 (and later, more) years after creation notwithstanding any previous grant by filing a "renewal" registration 28 years after the initial one. See 17 U.S.C. § 24 (1909). It was thought that the renewal registration system would allow authors who had granted away rights in the initial copyright term to get them back by filing a renewal registration, since the renewal registration created a new copyright ownership interest, and only the author or the author's heirs could exercise those renewal rights.

13.     However, the Supreme Court undercut the effectiveness of renewal registrations to retrieve authors' rights in *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643 (1943). *Fred Fisher* held that authors could be required to grant their inchoate renewal rights at the beginning of the original copyright term, and that such a grant was effective if the author lived into the renewal term. *Id.* at 658. That ruling effectively stymied the purposes underlying renewal rights, since it precluded authors who had granted rights to others at the beginning of the copyright term from recapturing those rights by renewal 28 years later.

14.     Congress in the Copyright Act of 1976 therefore created a new "termination" right, by which authors or specified statutory heirs could "terminate" grants made in the original term decades after they were made. Those new termination rights are codified in 17 U.S.C. §§ 203 and 304(c) and (d).

15. To prevent authors from prematurely contracting away their termination rights as they had been contractually pressured to do with renewal rights under the Copyright Act of 1909, Congress in the 1976 Copyright Act included provisions in the termination statutes to prevent their alienation until after the effective termination dates of termination for terminate works, decades after the original grants took place. Thus, 17 U.S.C. § 203(b)(4) specifically provides that "[a] further grant or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination." To make even clearer that premature grants or agreements to grant termination interests, even by the authors, are invalid, 17 U.S.C. § 203(a)(5) further provides that a notice of termination in favor of authors "may be effected notwithstanding any agreement to the contrary, including an agreement …to make any future grant."

16. Section 203(a)(3) of the Copyright Act of 1976, the termination statute applicable to Plaintiff's musical compositions, allows authors like Plaintiffs to terminate grants they made to third parties such as music publishers during a five-year period beginning 35 years after they were published or 40 years after the underlying grant was made, whichever occurs first. Such a termination is effected by serving a "notice of termination" no earlier than 10 years nor later than two years before the effective termination date stated in the notice, which termination date must be within the five-year termination window created by statute as described above. Thus, pursuant to 17 U.S.C. §§ 203(b)(3) and (4), the effective termination date must be stated in a notice of termination that is timely served on the previous copyright grantees or their successors and filed with the Copyright Office, and "a further grant or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination."  Once such a notice of termination has been served, it "may be effected

notwithstanding any agreement to the contrary, including an agreement …to make any future grant." 17 U.S.C. § 203(a)(5)

### C. Plaintiffs Exercise Their Termination Rights.

17. Plaintiffs served notices of termination of the grants they had previously made to grantee music publishers and their successors pursuant to 17 U.S.C. § 203 on December 22, 2020, which was within the statutorily permitted period for such notices. True and correct copies of the notices of termination of musical compositions composed by Plaintiffs George O'Dowd and Michael Craig on that date are attached as Exhibits 1 through 6.

18. As shown in Exhibits 1 through 6, the earliest termination date for any of Plaintiffs' works shown on those notices was December 23, 2022, with some works having later effective termination dates in 2023 through 2027. Since any "further grant or agreement to make a further grant, of any right(s)" covered by those notices of termination would be "valid only if… made after the effective date[s] of termination" set forth in those notices, only grants or agreements to grant termination rights after the effective termination dates, that is, after December 23, 2022 or the later termination dates as applicable and as described in those notices, can be valid under the termination statute pursuant to 17 U.S.C. § 203(b)(4).

19. Following service of the notices of termination attached as Exhibits 1 through 6, Plaintiffs began negotiating with their original grantees and third parties to grant or regrant the termination rights that would revert to Plaintiffs pursuant to the Copyright Act's copyright termination provisions, to realize the value of those reverted rights as Congress and the Copyright Act intended. Those terminations rights are very valuable, and worth millions of dollars.

### D. Defendants Attempt to Sell Plaintiffs' Termination Rights.

20. On December 8, 2021, a company owned by Plaintiffs and MEP entered into a "Senior Secure Note Purchase Agreement" (the "Note Purchase Agreement,") pursuant to which the principal amount of the note, minus approximately $1 million MEP retained but together with accrued and unpaid interest thereon, was due and payable in full on December 6, 2023. A true and correct copy of the Note Purchase Agreement (without its exhibits and attachments) is attached as Exhibit 7. Plaintiffs, on behalf of their company and themselves, also entered into other associated agreements with MEP on that same day, including a "Copyright Security Agreement" ("CSA"), an unsigned copy of which was attached to the Note Purchase Agreement as an Exhibit, that purported to secure payment of the sums described in the Note Purchase Agreement with the copyright termination interests listed in Schedule 1 thereto. A true and correct copy of that CSA with Schedule 1 is attached as Exhibit 8.

21. The CSA "grants, assigns and pledges to the 'Secured Party' (MEP) "all of Grantor's (Plaintiffs') copyrights" listed in its Schedule 1. Because the CSA was entered into before the effective termination dates stated in Exhibits 1-6, it provides that the copyright termination interests it describes would be granted to MEP in the future, "effective immediately upon the [future] Termination Date" stated in that Schedule 1. See Exhibit 7. The earliest of those effective termination dates was December 23, 2022, as described in Exhibits 1 through 6 above. Plaintiffs at the time erroneously believed that they had the authority to make such a grant.

22. Although Plaintiffs are not contractually obliged to repay the loan purportedly secured by the CSA until December 6, 2023 pursuant to the Note Purchase Agreement, on May 26, 2023, MEP sent Plaintiffs and others a letter incorrectly claiming without substantiation that

7

non-payment related "events of default" had purportedly occurred, and demanded immediate repayment of the loan, plus interest and other charges.

23. Further, without notice to or the knowledge of Plaintiffs, on or about June 27, 2023, MEP from their offices in New York issued to their auctioneer and agent Caspert a "Bill of Sale" of "the United States Termination Copyright Interests…in and to the musical works listed in Schedule A hereto" (emphasis in original), so that Caspert could sell those termination rights to a third party. A true and correct copy of that Bill of Sale is attached as Exhibit 9.

24. Defendants, using the Bill of Sale MEP issued to Caspert attached as Exhibit 9, have since June 27, 2023 attempted to and are attempting to sell to third parties the valuable copyright termination interests of Plaintiffs in dozens of musical compositions identified in Schedule A to Exhibit 9. And as admitted in that Schedule A, the earliest effective termination date for any of those compositions was December 23, 2022, more than one year after the parties entered into the CSA on December 8, 2021. Thus, the CSA was invalid under copyright law.

25. Without Plaintiffs' knowledge or consent, MEP and/or Caspert also registered that Bill of Sale with the Copyright Office on July 26, 2023, thereby making public MEP's claims to ownership of Plaintiff's copyright termination interests in the works described in Exhibit 9.

26. Neither the CSA attached as Exhibit 8 nor the Bill of Sale attached as Exhibit 9 gives MEP valid title to any copyright termination interests in Plaintiffs' works under copyright law, but Plaintiffs are informed and believe that MEP and Caspert nevertheless are continuing MEP's claims to own and Defendants' efforts to sell Plaintiff's copyright termination interests in the musical compositions identified in Exhibit 8 since the creation and recordation of the "Bill of Sale" attached as Exhibit 9. Defendants never gave notice to or otherwise advised Plaintiffs

of MEP's claim to Plaintiff's copyright termination interests, nor of their efforts to sell those interests to third parties contrary to Plaintiffs' ownership of those interests (as would be required by NY-UCC §§ 9-611 and 9-612 even if MEP properly owned the rights and the sale were otherwise permissible – which it does not and is not). Plaintiffs only very recently discovered MEP's efforts to sell Plaintiffs' copyright termination interests when a third party with whom it was and is negotiating to purchase Plaintiff's copyright termination interests advised Plaintiffs of MEP's claims to own those interests based on the CSA and Bill of Sale, and provided Plaintiffs with a copy of Defendants' July 26, 2023 Certificate of Registration of that Bill of Sale as shown in Exhibit 9 after that date.

27. In fact, neither the CSA nor the Bill of Sale provide Defendants with any cognizable ownership interest in the copyright termination interests described in Exhibits 8 and 9 because the CSA is invalid as a matter of copyright law, nor is the loan from the Note Purchase Agreement for which the CSA was security even due yet even if the CSA was valid (which it is not), and Defendants' efforts to sell copyright termination interests they do not own are improperly clouding Plaintiffs' title to their copyright termination interests, thereby lessening the market value of those interests and interfering with and making it more difficult and expensive for Plaintiffs to realize the millions of dollars of value they have in those interests as provided by the Copyright Act.

**FIRST CLAIM FOR RELIEF**

**(For Declaratory Relief to Quiet Title to Plaintiff's Copyright Interests)**

28. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 27, above.

29. An actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights in the copyright termination interests in Plaintiff's musical compositions described in Exhibits 1 through 9.

30. Specifically, Defendants contend that:

   a. the CSA attached as Exhibit 8 is valid and enforceable;

   b. MEP obtained valid security interests in Plaintiffs' copyright termination interests in the copyrighted musical compositions described in Exhibit 9 when the parties entered into the CSA attached as Exhibit 8;

   c. Defendants are entitled to sell the copyright termination interests described in Exhibit 9 pursuant to the CSA because Plaintiffs did not repay, on an accelerated basis, sums allegedly owed under the Note Purchase Agreement; and

   d. Defendants' recordation of the Bill of Sale attached as Exhibit 9 and other efforts to sell the copyright termination interests described in Exhibit 9 are a valid exercise of MEP's rights under the CSA and Bill of Sale.

31. Plaintiffs, in contrast, contend that:

   a. The December 8, 2021 CSA is invalid and unenforceable insofar as it purports to grant security interests in Plaintiff's copyright termination interests in the musical compositions identified in the notices of termination identified in Exhibits 1 though 6, because the CSA was entered into before the effective termination dates of those musical compositions, while pursuant to the copyright statute that creates those termination rights, any "further grant or agreement to make a further grant, of any right(s)" covered by those notices of termination can be "valid only if… made after the effective date[s] of termination" set forth in those notices, that

is, only if made after December 23, 2022 or later, as stated in those notices of termination and required by 17 U.S.C. 203(b)(4);

b. The CSA is invalid and unenforceable because it seeks to compel Plaintiffs to "contract away" their termination rights as authors of the works identified in Exhibits 1 through 6 before the effective dates of termination stated in those notices of termination in violation of 17 U.S.C. § 203(a)(5), which provides that a termination in favor of authors "may be effected notwithstanding any agreement to the contrary, including an agreement …to make any future grant;"

c. Federal copyright law preempts state contract or other laws to the extent state law attempts to create or enforce rights in copyrighted works contrary to the Copyright Act's provisions, requirements and restrictions, and the CSA's violation of copyright law's termination statute makes it invalid and unenforceable as a matter of copyright law regardless of state law or state law's application to the Note Purchase Agreement attached as Exhibit 7 or the CSA attached as Exhibit 8;

d. Plaintiffs did not default on their obligation under the Note Purchase Agreement, which means Defendants have no right to sell Plaintiff's copyright termination interests in the works described in Exhibit 9 even if the CSA were valid, which it is not;

e. The invalid and unenforceable nature of the CSA means that MEP could not have and did not obtain any valid security or other ownership interests in Plaintiff's copyright termination interests in the works described in Exhibits 1 through 9 through the CSA;

11

  f. The invalid and unenforceable nature of the CSA and MEP's lack of any valid security or other ownership interest in Plaintiffs' copyright termination interests means that Defendants have no right to claim any such ownership interests, no right to seek to sell those interests to any third party, and that Defendants are now improperly attempting to sell what they do not own to third parties in violation of copyright law;

  g. Defendants' recordation of the Bill of Sale with the U.S. Copyright Office and their other ongoing efforts to sell Plaintiffs' copyright termination interests in the copyrighted works Plaintiffs own that are identified in Exhibit 9 wrongfully clouds Plaintiffs' title to those works by creating confusion in the marketplace as to who owns those works, to Plaintiffs' harm and damage.

  32. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs desire a judicial determination and declaration of the parties' respective rights to ownership of the copyright termination interests identified in Exhibit 8 in these circumstances.

## PRAYER

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

  A. For a declaration that (i) the CSA attached as Exhibit 8 is invalid and unenforceable under copyright law; (ii) MEP have no security or other ownership interest in, and Defendants have no right to sell, the copyright ownership termination interests identified in Exhibits 1 through 9; (iii) MEP have no security or other ownership interest in, and Defendants have no right to sell, any of the other copyright termination interests in any musical compositions identified in Exhibits 1 through 9; and (iv) Plaintiffs George O'Dowd and Michael Craig are the

sole owners of the copyright termination rights and interests in and to those works identified in Schedule A to the Bill of Sale attached as Exhibit 9, and in and to those works identified in Exhibits 1 through 6 of this complaint;

B.     For a preliminary and permanent injunction prohibiting Defendants or anyone acting for Defendants' benefit or on Defendants' behalf from claiming that MEP have any ownership interest in, or that Defendants have any right to sell, any copyright termination interests in those musical compositions identified in Exhibits 1 through 9;

C.     For Plaintiffs' costs of suit and reasonable attorneys' fees to the extent permitted by law;

D.     For prejudgment interest on all sums awarded; and

E.     For such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 8, 2023

RIMON P.C.

By: */s/ Michael S. Lazaroff*
Michael S. Lazaroff
RIMON P.C.
100 Park Avenue, 16th Floor
New York, NY 10017
Tel/Facsimile: (646) 738-4151
E-Mail: michael.lazaroff@rimonlaw.com

Mark S. Lee (Pro Hac Vice Application forthcoming)
RIMON P.C.
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: (213) 375.3811
Email: mark.lee@rimonlaw.com

*Attorneys for Plaintiffs*